# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **CRIMINAL ACTION NO.** |
| | **1:20-CR-217-JPB-CCB** |
| **v.** | |
| **JAMAUL BOYCE,** | |
| **Defendant.** | |

## FINAL REPORT AND RECOMMENDATION

Defendant Jamaul Boyce is charged with possessing firearms after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 1); possessing with the intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C) (Count 2); and possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). (Doc. 1). The case is before the Court for consideration of Defendant's motion to suppress evidence seized from his residence following the execution of a search warrant, (Doc. 19), motion to suppress cell phone evidence (Doc. 25), and amended motion to suppress cell phone evidence, (Doc. 33). For the reasons set forth below, the undersigned **RECOMMENDS** that the motions be **DENIED**. The Court addresses each motion in turn.

I.     **Motion to Suppress Evidence Seized from Defendant's Residence**

**A. Facts**

On June 21, 2019, Clayton County Police Department Detective Z. Williams

applied for and received a warrant to search Defendant's residence. (Doc. 24-1).

The affidavit offered in support of the search warrant offers these facts:

> On 06/21/2019 around 07:15am, The Clayton County Narcotics Unit
> was contacted by U.S. Marshal Task Force Officer Hutchens in
> reference to illegal substances located inside the residence of 1507
> Pine D[r]ive Apartment B-8, College Park, GA 30349. The U.S.
> Marshal Task Force executed Arrest Warrant #12SC114452 for Jamual
> R. Boyce (Offense: Violation of Probation, Jurisdiction: Fulton
> County) and located Boyce inside the apartment as well as what
> appeared to be white substance believed to be cocaine, unidentified
> prescription pills, a grinder commonly used for green leafy material
> such as marijuana, and a black firearm located on a small table next
> to the bed in his bedroom. U.S. Marshal Task Officers conducted
> surveillance [on] 06/20/2019 and observed Boyce driving [a] white
> Chrysler 300 (North Carolina Temp TAG #23832068), which does not
> return to the vehicle. On this date, at . . . , K9 Officer Baker and K9
> Odin conducted a free air sniff on the vehicle, which resulted in a
> positive alert for the odor of illegal substances. The Clayton County
> Narcotics Unit does believe there may possibly be additional illegal
> substances inside the apartment as well as the vehicle based on the
> items located in the apartment in plain view and the K9 Odin giving
> a positive alert for the odor of illegal substances on the vehicle.

(Doc. 24-1 at 1–2).

Officers executed the search warrant the same day and recovered a number

of items, including:

2

- A small amount of marijuana from near the bed in the master bedroom;

- A digital scale, a loaded firearm, cocaine, methamphetamine, suspected heroin, oxycodone pills, hydrocodone, and a pill press from a nightstand on the right side of the bed;

- Amphetamine and buprenorphine pills from a nightstand in the master bedroom (it is not clear if this is the same nightstand referenced above); and

- A bullet proof vest, other firearms, a gun case, drugs, four phones, a vape pen, and a pill press from other areas in the residence (including the bedroom).

*Id.* at 7.

Defendant argues that the seized items must be suppressed because the affidavit offered in support of the search warrant contains material misstatements and omissions. He contends that the statement in the affidavit describing what Task Force Officer Hutchens told the affiant was in plain view (a white substance believed to be cocaine, unidentified pills, a grinder, and a firearm) conflicts with various reports that several of the officers completed. (Doc. 19 at 7–9). Specifically, he attaches the report of Clayton County Detective Wade, who wrote that

Hutchens told him that officers observed suspected crack cocaine and a digital scale on a nightstand, (Doc. 19-2 at 4); the report of Task Force Officer Williams, who wrote that officers observed a ballistic vest and a firearm, as well as a small handgun, a pill bottle, and small plastic bags of what appeared to be narcotics on a nightstand, (Doc. 19-3); and the report of Task Force Officer Golowich (who does not appear to have taken part in the search), who wrote that officers informed him that they observed a ballistic vest and rifle box, as well as a small pistol, a pill bottle, and small plastic bags containing suspected drugs on a nightstand, (Doc. 19-4 at 1). Defendant maintains that Detective Williams's statement in the affidavit that Hutchens informed him of cocaine, prescription pills, a grinder, and a pistol in plain view "directly diverges" with Wade's statement, which asserts that Hutchens observed crack and a scale in plain view. (Doc. 19 at 8–9). He further maintains that the canine sniff that is referenced in the affidavit "is a misrepresentation as Mr. Boyce and his counsel have no evidence confirming that the air sniff was conducted or that the results were positive." *Id.* at 8.[1]

---

[1] Defendant also argues that the canine's certification provided by the Government (dated September 27, 2019) postdated the date of the search, which he contends is evidence that the statement about the sniff was knowingly and intentionally false. (Doc. 26 at 5–6). The Government subsequently provided copies of certifications that predate the search, (Doc. 28-1), and the Court does not address this particular argument any further. (*See* Doc. 31 at 1 (Defendant's brief

**B. Analysis**

"An affidavit supporting a search warrant is presumed valid." *United States v. Whyte*, 928 F.3d 1317, 1333 (11th Cir. 2019). When a defendant challenges the veracity of an affidavit offered in support of a search warrant, he must make this "substantial preliminary showing" before he is entitled to an evidentiary hearing on the issue: "that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). As such, "a court must disregard arguably false or misleading statements, consider any omitted statements, and then determine whether the affidavit still supports a finding of probable cause. If it does, no *Franks* hearing is required." *United States v. Blair*, No. 1:18-cr-260-LMM-CMS, 2021 WL 2283891, at *2 (N.D. Ga. June 4, 2021) (internal quotation marks, alteration, and citation omitted). Defendant has not made a substantial preliminary showing sufficient to challenge the veracity of the affidavit, and he is therefore not entitled to a *Franks* hearing.

---

acknowledging that the canine was certified at the time of the sniff)).

### 1.  The Affiant's Statement About What was in Plain View

Defendant first argues that the statement in the affidavit about what the Task Force officers observed in plain view—"white substance believed to be cocaine, unidentified prescription pills, a grinder commonly used for green leafy material such as marijuana, and a black firearm located on a small table next to the bed in the bedroom," (Doc. 24-1 at 1–2), "conflicts" with the investigative reports that the officers completed. (Doc. 19 at 7–8). The crux of Defendant's argument is that because none of the officers individually reported seeing all four of the items listed in the affidavit, and indeed offered reports about what was seen that do not perfectly match one another, that all of the officers' credibility is called into question. *Id.*

It is true that the officers' reports about what was in plain view are not mirror images of one another—Wade wrote that Hutchens told him that officers observed suspected crack cocaine and a digital scale on a nightstand, (Doc. 19-2 at 4); Task Force Officer Williams wrote that officers observed a ballistic vest and a firearm, as well as a small handgun, a pill bottle, and small plastic bags of what appeared to be narcotics on a nightstand, (Doc. 19-3); and Task Force Officer Golowich wrote that officers informed him that they observed a ballistic vest and rifle box, as well as a small pistol, a pill bottle, and small plastic bags containing

suspected drugs on a nightstand, (Doc. 19-4 at 1). But the mere fact that the reports do not precisely mirror one another does not make them "inconsistent" for purposes of establishing that Detective Williams deliberately or recklessly included false statements or omitted material information in his affidavit. Indeed, all of the items listed in the affidavit as being in "plain view" were found in the subsequent search. (*See* Doc. 24-1 (search warrant return listing, among other things, cocaine, pills, and multiple firearms); Doc. 24-2 (pictures of the search identifying something that is labeled as a grinder)[2]). And the search warrant return makes clear that the residence contained a cornucopia of illicit items—a bulletproof vest, marijuana, cocaine, methamphetamine, a digital scale, three firearms, a blender cup filled with cocaine, suspected heroin, oxycodone pills, hydrocodone pills, amphetamine pills, buprenorphine pills, and a pill press. (Doc. 24-1 at 7). It is, therefore, altogether unsurprising that, upon an abbreviated "plain

---

[2] The undersigned cannot determine, at least with any certainty, that the object labeled as a "grinder" in the photographs is, in fact, a grinder. However, even if the Court omits any reference to the grinder from the affidavit, there remains ample probable cause to support the warrant. *See, e.g., United States v. Votrobek*, 847 F.3d 1335, 1344 (11th Cir. 2017) (affirming the district court's decision not to hold a *Franks* hearing in part because the defendant did not show that "the affidavit lacked probable cause absent the challenged material").

view" observation, different officers might see or remember different things.[3] The Court therefore sees no "conflict" in the reports for purposes of making out a *Franks* violation. But even if there is such a conflict, there is nothing to support the notion that the affiant, Detective Williams, was aware of the different reports and deliberately or recklessly included information (or failed to include information) to hide the differences. *See, e.g., Whyte*, 928 F.3d at 1333–34 (noting that "[o]missions made negligently or because of an innocent mistake are insufficient" and that an omission "must have been made with the purpose of misleading the judge issuing the warrant").

Defendant, in his reply brief, suggests that there was nothing in plain view, but rather that the officers conducted an illegal search of his residence while executing the arrest warrant and then simply reported that the items they found

---

[3] This conclusion is only strengthened by the photographs of the nightstand taken during the search. It is, in short, a mess. Although not a complete inventory, the small table has, at least, multiple pill bottles, food, water bottles, cash, papers, an identification card, a firearm, keys, and glasses—all scattered about in complete disarray. The fact that someone might look at the mass of items on the table and see an illicit object that someone else happened to miss is entirely plausible, if not to be expected. In light of what this particular nightstand looks like, the Court simply cannot accept Defendant's argument that "[t]he surface of a typical nightstand is no more than a few feet, and it is surprising (if not suspicious) that officers would report variance of contraband on such a small surface." (Doc. 26 at 3).

were in "plain view." (Doc. 26 at 3–4). In support, Defendant relies on a statement that his girlfriend gave to officers after they executed the search warrant, when she told them that she never saw drugs or weapons in the home. *Id.* at 4. He also states that an unidentified officer testified at a preliminary hearing in state court that he did not observe any items in plain view. *Id.* He asks the Court to defer ruling on the motion until such time as he supplements the record with a transcript of the state court proceedings. *Id.*

For a host of reasons, the Court does not find these arguments persuasive. First, there is no indication that the affiant, Detective Williams, was aware of either Defendant's girlfriend's statement or the unidentified officer's testimony and, again, Defendant has to show that *the affiant* deliberately or recklessly omitted information from the affidavit. Second, Defendant's girlfriend's statement that she never saw anything illegal in her residence (putting aside whether anything illegal was in plain view) is entirely unbelievable, given the multitude of drugs and guns ultimately recovered during the search. [4] Third, the argument about the unidentified officer's testimony is improperly raised for the first time in

---

[4] The Court also notes that Defendant's girlfriend made the statement at a time when she had a vested interest in minimizing her own involvement with the large quantity of drugs and guns that had just been recovered from the residence.

9

Defendant's reply brief. *See United States v. Morris*, No. 1:15-CR-351-WSD-JSA, 2016 WL 8669407, at *8 (N.D. Ga. July 15, 2016) (noting that a defendant is not permitted to raise new arguments for the first time in a reply brief), *adopted by* 2016 WL 4267990 (N.D. Ga. Aug. 15, 2016). And finally, the Court has held off on addressing Defendant's motion as he requested, yet he has not supplemented his reply brief with the transcript of the testimony of the unidentified officer. For all those reasons, as well as those set forth above, Defendant has failed to show that anything in the officers' reports demonstrates that Detective Williams deliberately or recklessly included or omitted information from his affidavit, and those reports therefore do not entitle him to a *Franks* hearing.

### 2. The Affiant's Statement About the Canine Search

The affidavit in support of the search warrant states that a canine conducted a free air sniff on a vehicle that Defendant was observed driving and that the canine alerted for the odor of illegal substances. (Doc. 24-1 at 1–2). Defendant argues (and the Government does not dispute) that there is no police report documenting the sniff or the canine's positive alert. (Doc. 19 at 8; Doc. 28 at 1). As such, Defendant argues that "it is unclear whether the positive air sniff test is a misrepresentation" because there is "no evidence confirming that the air sniff was

conducted or that the results were positive." (Doc. 19 at 8). Defendant's argument fails.

Again, to be entitled to a *Franks* hearing, Defendant must "make a substantial *preliminary* showing that statements or omissions are intentionally false or recklessly misleading." *United States v. Barsoum*, 763 F.3d 1321, 1329 (11th Cir. 2014) (emphasis in original). "The allegations of deliberate omission 'must be more than conclusory and must be supported by more than a mere desire to cross-examine.'" *Id.* (quoting *Franks*, 438 U.S. at 171). Here, Defendant alleges simply that it is "unclear" whether there is a misrepresentation in the affidavit because there is no police report documenting the canine's alert. But a lack of corroborating evidence does not make a sworn statement untrue—if anything, the lack of any other evidence on the matter simply leaves the Court with only the sworn statement, in which the affiant attested that the sniff occurred. And with only the sworn statement, there is no basis for finding that Defendant has satisfied his burden of making a substantial preliminary showing that the statement about the sniff was intentionally false or recklessly misleading. *See, e.g., United States v. Abari*, No. 19-cr-103(01)MJD/ECW, 2020 WL 4727436, at *10–11 (D. Minn. Aug. 14, 2020) (rejecting a defendant's request for a *Franks* hearing based on the absence of police reports or notes to support particular information in an affidavit).

11

Moreover, even if the Court sets aside the information about the canine search, "there remains sufficient content in the warrant affidavit to support a finding of probable cause," meaning that "no [*Franks*] hearing is required." *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009) (internal quotation marks omitted). The information in the affidavit about the drugs, pills, and gun observed in plain view (about which the undersigned recommends denying Defendant's motion) provides ample probable cause to support the warrant, even without considering the canine alert. For all of the reasons stated above, I recommend that Defendant's motion to suppress evidence resulting from the search of his residence, (Doc. 19), be **DENIED**.

## II.   Motions to Suppress Cell Phone Evidence

Defendant moves to suppress evidence obtained from one of three cell phones that was seized from his residence. (Doc. 25). The phone was originally seized from Defendant's residence on June 21, 2019, pursuant to the search warrant discussed above. *Id.* at 1–2. On July 2, 2019, a Clayton County police officer obtained a second warrant to search the phone. (Doc. 29-1). In his motion, (Doc. 25), Defendant argues that (1) the second warrant is unsupported by probable cause because there is no affidavit offered in support of it, and (2) the first warrant authorizing the search of the residence was defective based on the alleged

12

misrepresentations discussed (and rejected) above and, therefore, the officers had no legal basis to seize the phone in the first place. (Doc. 25 at 3–7). In response, the Government notes that it inadvertently failed to produce the application and affidavit offered in support of the second search warrant, that it did not become aware of the oversight until after it received Defendant's motion, and that it subsequently produced the application and affidavit to Defendant. (Doc. 29 at 2). The Government argues that Defendant has no standing to challenge the search of the phone, that the second search warrant is supported by probable cause, that the good-faith exception applies even if there is no probable cause, and that there is no fruit-of-the-poisonous-tree problem because Defendant's *Franks* challenge as to the first warrant fails. (Doc. 29 at 3–9). After receiving the application and affidavit from the Government, Defendant filed an amended motion to suppress the cell phone evidence, arguing that he does have standing, that the affidavit does not sufficiently establish a nexus between the phone and the alleged crimes, that the good-faith exception does not apply, and that the second search warrant application and affidavit contains a material misrepresentation that entitles him to a *Franks* hearing. (Doc. 33). The Government filed a response brief, (Doc. 38), Defendant filed a reply, (Doc. 39), and the matter is now ripe for review. Because Defendant has not demonstrated that he has a reasonable expectation of privacy in the phone that was searched, the motion and amended motion to suppress,

(Docs. 25, 33), should be denied. And because Defendant lacks a reasonable expectation of privacy, the Court declines to further consider Defendant's arguments regarding whether the second search warrant is supported by probable cause or whether the affidavit supporting the second search warrant contains a material misrepresentation.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Those protections "extend to any thing or place with respect to which a person has a reasonable expectation of privacy." *United States v. Ross*, 964 F.3d 1034, 1040 (11th Cir. 2020) (internal quotation marks omitted). "By contrast, an individual's Fourth Amendment rights are *not* infringed—or even implicated—by a search of a thing or place in which he has no reasonable expectation of privacy." *Id.* (emphasis in original). "The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy." *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." *Id.* (internal quotation marks omitted); *see also United States v. Gregg*, 771 F. App'x 983, 986–87 (11th Cir. 2019) ("To have standing to challenge the search of a cell phone, a

14

defendant bears the burden of establishing both a subjective and an objective expectation of privacy.") (internal quotation marks omitted).

The Court must assess a person's expectation of privacy on a case-by-case basis, and no one factor is dispositive. *United States v. Bushay*, 859 F. Supp. 2d 1335, 1362 (N.D. Ga. 2012). Courts have considered, among other things, property ownership, whether the defendant has a possessory interest in the thing seized or the place searched, whether the defendant has the right to exclude others, whether he has exhibited a subjective expectation that the place would remain free from government intrusion, whether he took normal precautions to maintain his privacy, and whether he was legitimately on the premises. *Id.* And, as noted above, it is the defendant's obligation to put forth "specific facts" in the motion to suppress that are sufficient to demonstrate the reasonable expectation of privacy. *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000).

The Government argues that Defendant does not have a reasonable expectation of privacy sufficient to challenge the search of the cell phone. It notes that police reports describe the phone as belonging to Liva Alonso, Defendant's girlfriend. (Doc. 25-3 at 4). Indeed, when the phone was logged into evidence by the Clayton County Police Department, the inventory sheet lists it as the property of Liva Alonso. *Id.* at 5. And the Government proffers that there are text messages

on the phone allegedly between Ms. Alonso and Defendant, who is identified in the phone under the contact name "Husband." *Id.* at 6–7.

Defendant offers no affidavits or other evidence regarding his interest in the phone. In his brief, he argues that the phone was recovered from his home and that it "could have been used by" Defendant or Ms. Alonso. (Doc. 33 at 3; Doc. 39 at 2). He notes that the Government argues that the phone belongs to Ms. Alonso but "has failed to introduce any records or affidavits in discovery that authenticate this ownership." (Doc. 39 at 2).

To establish a reasonable expectation of privacy sufficient to challenge the search of a cell phone (or location information concerning a cell phone), courts have routinely required a defendant to offer evidence demonstrating that he owned, possessed, or used the phone. *See United States v. Gatson*, 744 F. App'x 97, 100 (3d Cir. 2018) (affirming the denial of a motion to suppress information obtained from data warrants for a cell phone where the defendant made no claim that he ever owned, possessed, or used the phone); *United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015) (affirming the denial of a motion to suppress location information obtained for cell phones where the defendant did "not assert that he owned, possessed, or used either of these cell phones"); *United States v. Harris*, No. 8:12-cr-205-T-17MAP, 2016 WL 11469673, at *5 (M.D. Fla. July 25, 2016) (denying motion to suppress and finding that the defendants had no legitimate expectation

16

of privacy in phones where they did not offer any evidence regarding their "possession, use, or control of the phones"), *adopted sub nom. by United States v. Villanueva*, No. 8:12-CR-205-T-17MAP, 2016 WL 4150002 (M.D. Fla. Aug. 3, 2016).

Here Defendant has not offered any evidence, or even argument, that he owned, used, or possessed the cell phone. Although he comes close, he never actually says that he used the phone. He argues, for example, that he and Ms. Alonso resided together and "shared much of their property and belongings"—without saying that they shared the phone. (Doc. 39 at 1). He argues that he "could have" used the phone, (Doc. 33 at 3), without arguing or attesting that he *did* use the phone. Defendant's argument really boils down to the notion that because the phone was recovered from his home, he automatically has a legitimate expectation of privacy in it. But that is not enough in the context of a cell phone, where courts have routinely required a defendant to demonstrate that he actually used, possessed, or owned the phone. And this makes sense, given the unique and often personal role that cell phones play in today's society. They contain reams of information that many people choose to keep private. As such, in many situations, people simply do not share cell phones in the way they might share other items—even, as here, where the two people are in a relationship (indeed, perhaps *especially not* when the two people are in a relationship). *See generally Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018) ("While individuals regularly leave their

17

vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales."); *United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring) (noting that GPS monitoring of a cell phone has the capacity to reveal a wealth of detail about a person's "familial, political, professional, religious, and sexual associations").

This is not to say that a person could not share a cell phone with a spouse or partner and demonstrate a legitimate expectation of privacy in that shared phone. But Defendant has not done so here. He has, purposefully or otherwise, simply not stated or established that he used, possessed, or owned the cell phone—and the mere fact that it was in his home is not sufficient.

Defendant cites to *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017), for the proposition that a person has an expectation of privacy in an iPad kept in the house where the person lives. (Doc. 33 at 2). In that case, two co-defendants who lived together jointly challenged whether the district court appropriately issued an order under the All Writs Act compelling Apple to assist in bypassing the security features of an iPad recovered from the defendants' home. 868 F.3d at 966, 969. The Eleventh Circuit noted that, to the extent the defendants needed to demonstrate Fourth Amendment standing to challenge the All Writs Act order, they could do

18

so. *Id.* at 969 n.4.[5] The court noted that "Blake and Moore had a reasonable expectation of privacy in the password-locked iPad, which was owned by one of them, used by one or both of them, and kept inside the house they both lived in." *Id.* The court cited and relied upon cases establishing that individuals generally possess a reasonable expectation of privacy in their home computers. *Id.*

The dicta in *Blake* is distinguishable for a number of reasons. First, the item the court considered in that case (an iPad) is not a phone. And as noted above, phones (at least from a privacy standpoint) are simply different from everything else—even different from something like a tablet or a home computer. Second, and more importantly, the challenge in *Blake* was mounted by both of the homeowners and, therefore, one of them (or perhaps both) had to be the owner or user of the iPad, meaning that at least one of them had a legitimate expectation of privacy in it. Here, in contrast, it is only Defendant who is challenging the phone. He could have established facts similar to those in *Blake* by, for example, asserting that he (or he and his girlfriend both) used or owned the phone. But he has not done so, leaving the Court with little more than the fact that the phone was recovered from a home that he lived in—and in the face of the evidence proffered by the Government that, in fact, the phone appears to have been owned and used by Ms.

_____

[5] The Eleventh Circuit did not decide whether the defendants had to actually make such a showing. *Blake*, 868 F.3d at 969 n.4.

Alonso. Indeed, the analysis here would be quite different if Defendant and Alonso were both defendants in this case and were both seeking to suppress the information from the phone (as was the scenario in *Blake*). But they are not—and Defendant is therefore left to affirmatively establish that he used, possessed, or owned the phone, which he has not done.

Defendant argues that the Government has not offered any evidence to establish who owned the phone. (Doc. 39 at 2). But that argument places the burden on the wrong party. As the person seeking to suppress the information recovered from the phone, it is *Defendant's* burden to demonstrate that *he* has a legitimate expectation of privacy in it. *See Segura-Baltazar*, 448 F.3d at 1286 ("The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy.").[6]  Because Defendant has not demonstrated that he owned, used, or possessed the phone at issue, he has no legitimate expectation of privacy in it, and his motions to suppress, (Docs. 25, 33), should be denied. And

---

[6] Defendant further argues that the Government must think that he at least used the phone, noting that as the target of the investigation, "it would only make sense that [the] affiant sought information from his device, or a device shared by him at minimum, to link him to the alleged crime." (Doc. 39 at 2). But a defendant "may not rely solely on the government's theory of the case to show that he has standing to contest a search." *United States v. Dooley*, No. 1:11-CR-255-3-TWT, 2013 WL 2548969, at *19 (N.D. Ga. June 10, 2013) (internal quotation marks and alterations omitted). As such, the Government's beliefs about whether Defendant may have used the phone are not relevant.

in light of that recommendation, the Court declines to further address Defendant's arguments about the alleged deficiencies in the cell phone search warrant.

## III. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's motions to suppress (Docs. 19, 25, 33), be **DENIED**.

The undersigned previously deferred Defendant's motion to sever, (Docs. 18, 20), to Judge Boulee, and this case is now certified **READY FOR TRIAL**.

**IT IS SO RECOMMENDED,** this 10th day of November, 2021.

_____

CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE